THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ARMANETTE WILLIAMSON<br>    Plaintiff, | )<br>)<br>) |
| vs. | ) Case No.:<br>) |
| METHODIST HOSPITALS, INC.,<br>ERIN JANSKY, JAIME SERRANO<br>DENISE VASQUEZ, & PENNY<br>HOLSCLAW, ROSEMARY MUEX and<br>unknown supervisors &<br>    employees of Methodist | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT

NOW COMES Plaintiff ARMANETTE WILLIAMSON (hereinafter "WILLIAMSON"), by and through counsel, Robin Remley of the Law Office of Robin Remley LLC and for her Complaint against the Defendants, METHODIST HOSPITALS, INC. ("METHODIST"), ERIN JANSKY ("JANSKY"), JAIME SERRANO ("SERRANO"), DENISE VASQUEZ ("VASQUEZ"), PENNY HOLSCLAW ("HOLSCLAW"), ROSEMARY MUEX ("MUEX") and other unknown supervisors or employees of Methodist, states as follows:

### I. Introduction

1.    Plaintiff filed this action to redress violations by Defendant, METHODIST, of the Americans with Disabilities Act (ADA), and Family Medical Leave Act ("FMLA"), as well as violations of the FMLA by individual defendants, JANSKY, SERRANO, VASQUEZ, HOLSCLAW, and MUEX.

**II.  Jurisdiction and Venue**

    2.    This action is initiated pursuant to the ADA, and FMLA. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contact with this state and this judicial district is sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice.  Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Suit Rights on or about June 10, 2021, and thus, filing of this complaint (with respect to ADA) is within the appropriate time frame. The EEOC made a determination that discrimination based on disability did occur with respect to Williamson.

    3.    The United States District Court for the Northern District of Indiana has original subject matter jurisdiction, and venue is properly laid in this district because the claims arise under laws of the United States and all actions took place in the county of Lake, State of Indiana.

**II.  Parties/Background**

    4.    Plaintiff WILLIAMSON is a citizen of the United States, residing in city of Gary, County of Lake, State of Indiana..

    5.    Defendant METHODIST does business in County of Lake, State of Indiana. Defendants JANSKY, SERRANO, VASQUEZ, HOLSCLAW, and MUEX were all employees/supervisors of METHODIST. Jansky was the Manager of Employee and Labor Relations, as was Serrano.  Vasquez was the Assistant Nursing Director.  Holsclaw was the Manager of Occupation Health, Safety and Wellness.  Muex was the Cardiac nursing supervisor.

**III.  Factual Background**

    6.    Plaintiff hereby incorporates paragraphs 1-5 as if fully contained herein.

    7.    Williamson began her employment with Methodist in January, 2002 as a

Certified Nursing Assistant ("CNA").

8. On or about January 5, 2017, Williamson was working as a CNA, when she was injured on the job while lifting a deceased person.

9. She was suffering chest pain, and could not move her arms, and had pain in her spine, as a result—which she reported to employee health.

10. As a result of this injury, she was off work January 9 through January 11, 2017.

11. It was later determined that Williamson had suffered a right shoulder partial thickness rotator cuff tear and subacromial decompression.

12. Among surgeries, she endured a cervical fusion of C-5 and C-6.

13. In or about November, 2017, cardiac Supervisor, Rosemary Muex, kept asking when Williamson was coming back saying "it's just surgery" and "We can't keep holding your position open."  She was cussing on the phone saying "you need to get your shit together or you won't have a job ." Additionally, Rosemary indicated to Williamson that she could be terminated because she could not do compressions with CPR.

14. Through September, 2018, Williamson continued to suffer from her injuries, receiving various treatment and surgeries.

15. She also was on FMLA leave at various times due to the injuries sustained.

16. As a result of the injuries sustained, Williamson filed a worker's compensation claim.

17. Additionally, as a result of injuries sustained, she was assigned to light duty.

18. For instance, from March 18, 2018 through May 25, 2018 (or approximately during those dates, over two months), Williamson was assigned to doing secretarial-type work, setting appointments, answering phones, and faxing—due to her restrictions.

19. From May 25, 2018 through August 8, 2018, Williamson was on FMLA leave for surgery to remove the C6 disc (replaced with titanium).

20. At a later point, it was determined that Williamson had a permanent impairment rating, and limited range of motion.

21. On August 12, 2018, Williamson went back to work in the central business office of Methodist, again in a light duty position, due to her restrictions. Her duties consisted of inputting information into a computer, updating information and clerical tasks.

22. Williamson was able to perform the duties of this position, as she had performed in the past, despite her injuries, symptoms or any limitations. She also had experience with data processing in the past.

23. Around this time or shortly thereafter, Williamson's worker's compensation case was coming to a close.

24. On September 8, 2018, Methodist Employee Health contacted Williamson's supervisor at the time, Kerry, and instructed her to tell Williamson to go home.

25. On September 9, 2018, Williamson returned to work, only to find that her email had been deleted, her paperwork had been cleaned out, and her lock on her locker had been cut off.

26. As a result, Williamson went to Methodist Northlake employee health department, and was told see the head of Human Resources, SERRANO. SERRANO instructed her to look on the Methodist job board to find a new position.

27. In order to find a position, therefore, Williamson was forced to come into Methodist Human Resources department each day to get on the computer, in person. This could not be done from home.

28. Williamson inquired as to why she could not continue doing the job she had

been doing, but was told that she was not qualified for it—despite the fact that she had been performing these duties, and despite the fact that six years prior, she had performed the duties of that same job.

29. Williamson kept coming in during that week, but was told that she was coming in too much.

30. During the first week of October, 2018, Williamson asked the mailroom about the positions for which she had applied. The mailroom staff could not figure out why Williamson was being made to go through so many hoops to remain employed.

31. She also had an interview with medical records. One week went by, and Williamson contacted the supervisor in medical records to inquire about the position. Williamson was told that she was put on a "do not hire" list.

32. However, when Williamson inquired with Human Resources, they denied that she was put on a "do not hire" list.

33. Shortly after October 17, 2018, Williamson received a letter in the mail from Methodist Manager of Employee and Labor Relations, JANSKY, which was carbon copied to Serrano, Vasquez, and Holsclaw.

34. The letter purported to reiterate a conversation between Jansky, Holsclaw and Williamson, whereby Williamson was toled that since she had permanent restrictions, which would not allow her to return to her position as CNA, she was provided with 30 days from September 14, 2018, to apply for any positions for which she believed she was qualified, before being terminated.

35. The letter went on to state that since "[she was] unable to secure any positions…to move forward into" the only recourse was to "end [her] employment" and that "[e]ffective October 15, 2018" her employment was terminated.

## IV. COUNT I VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT— FAILURE TO ACCOMMODATE- BY METHODIST

36. Plaintiff incorporates paragraphs 1-6 as if fully set forth herein.

37. WILLIAMSON was at all times relevant to this Complaint, disabled, within the meaning of the Americans with Disabilities Act ("ADA") et seq.

38. WILLIAMSON was able to work with or without reasonable accommodation, as demonstrated by her stint with Methodist, after her injuries, and after restrictions were put into place—close in proximity to termination.

39. WILLIAMSON was unlawfully discriminated against on the basis of her disability inthe terms and conditions of her employment, in that the Defendants failed to engage in an interactive process to accommodate Williamson, to provide a reasonable accommodation.

40. In fact, instead of engaging in such process or assisting Williamson, Defendants yanked Williamson out of the position she had been satisfactorily been performing—post injury and post medical leave—and forced her to find her own accommodation/job within the company-- or be fired.

41. Reasonable accommodation was very apparently available, as Methodist had already provided it.

42. Such accommodation obviously posed no undue burden, as Methodist had already provided it.

43. Yet, Methodist did not provide the previously provided accommodation—or any other, and instead, terminated Williamson.

WHEREFORE, Plaintiff seeks judgment against the Defendant, METHODIST in an amount that is fair and reasonable in the premises, plus costs of this action, punitive damages per statute, attorneys fees, and all other just and proper relief.

### V.     COUNT II –DISABILITY DISCRIMINATION-ADA- METHODIST

44.     Paragraph 44 hereby re-alleges and incorporates Paragraphs 1 through 45 as if fully set out herein.

45.     WILLIAMSON was unlawfully discriminated against on the basis of her disability in the terms and conditions of her employment by (among other things):

- being subjected plaintiff to higher levels of managerial scrutiny than similarly situated, non-disabled employees;
- failing and refusing, despite knowledge of the plaintiff's disability and the nature of the accommodations required, to provide reasonable accommodations for plaintiff;
- subjecting plaintiff to a higher level of disciplinary scrutiny than similarly situated non-disabled employees;
- penalizing plaintiff for requesting leave and/or for requesting accommodations or restriction
- treating non disabled similarly situated employees more favorably
- terminating plaintiff's employment on the basis of the foregoing.

WHEREFORE, Plaintiff seeks judgment against the Defendant, METHODIST in an amount that is fair and reasonable in the premises, plus costs of this action, punitive damages per statute, attorneys fees, and all other just and proper relief.

### VI.     COUNT III ADA RETALIATION- METHODIST

46.     Paragraph 44 hereby re-alleges and incorporates Paragraphs 1 through 45 as if

fully set out herein.

47. METHODIST was retaliated against and terminated for having a disability and/or requesting an accommodation, in violation of the ADA.

WHEREFORE, Plaintiff seeks judgment against the Defendant, METHODIST in an amount that is fair and reasonable in the premises, plus costs of this action, punitive damages per statute, attorneys fees, and all other just and proper relief.

## VII. COUNT IV FMLA INTERFERENCE- ALL DEFENDANTS

48. Paragraph 44 hereby re-alleges and incorporates Paragraphs 1 through 47 as if fully set out herein.

49. WILLIAMSON's termination was in violation of the FMLA, 29 CFR 825.200 et seq.

50. At all times herein, METHODIST had more than 50 employees, and thus is subject to the mandates of the FMLA.

51. WILLIAMSON was eligible for FMLA leave at all relevant times in that she had worked more than 1250 hours in the preceding twelve (12) months prior to the leaves preceding her termination.

52. WILLIAMSON was qualified for FMLA leave in that she had a serious health condition, i.e. a right shoulder partial thickness rotator cuff tear and subacromial decompression, multiple surgeries, some limitations with mobility and lifting.

53. Pursuant to the FMLA, an employee on such leave is to be returned to her former position or an equivalent position. Williamson was returned the same position she held prior to her last FMLA leave.  However, this position was then removed from her shortly thereafter, and then she was terminated.  Therefore, the "reinstatement" was essentially a sham, and WILLIAMSON was not reinstated within the meaning of the FMLA.

54. Defendants violated the FMLA and interfered with WILLIAMSON's FMLA rights by failing to reinstate her or maintain such reinstatement, to the same or equivalent position upon his return.

55. Defendants' discharge of WILLIAMSON interfered with her right to re-instatement under the FMLA.

56. Defendants JANSKY, SERRANO, VASQUEZ, HOLSCLAW, and MUEX are individually liable pursuant to definitions under the FMLA due to their control over WILLIAMSON's leaves, benefits, and termination. Each had the ability and duty to ascertain the rules, regulations, notices and requirements of the FMLA, but failed in doing so and/or properly applying the same.

57. Further, METHODIST is vicariously liable for the actions and inactions of JANSKY, SERRANO, VASQUEZ, HOLSCLAW, and MUEX via respondeat superior, as each was acting within the scope of her employment with METHODIST at the time of her actions and/or inactions.

58. Defendants actions were not in good faith and they did not take steps to comply with FMLA.

59. Defendants **acted intentionally, and thus the three (3) year statute of limitations applies.**

WHEREFORE, Plaintiff seeks judgment against the Defendants METHODIST, and JANSKY, SERRANO, VASQUEZ, HOLSCLAW, and MUEX in an amount that is fair and reasonable in the premises, plus costs of this action, liquidated or punitive damages per statute, attorneys fees, and all other just and proper relief.

## VIII.  COUNT V FMLA RETALIATION- ALL DEFENDANTS

60.     Paragraph 59  hereby re-alleges and incorporates Paragraph 1 through 58 as if fully set out herein.

61.     The actions and inactions of Defendants METHODIST, and JANSKY, SERRANO, VASQUEZ, HOLSCLAW, and MUEX, including failing to interact with her to develop an accommodation, failing to provide accommodation, taking away the position that had previously accommodated her, and terminating Williamson, were in retaliation for WILLIAMSON exercising her FMLA rights and/or taking FMLA leave.

62.     The actions of MUEX, in verbally abusing, harassing, and threatening WILLIAMSON were in retaliation for exercising her FMLA rights and/or complaining of ADA violations.

63.     The actions of METHODIST, and JANSKY, SERRANO, VASQUEZ, HOLSCLAW, and MUEX, in making WILLIAMSON's working conditions sointolerable that a reasonable person would find them harassing and unworkable, causing extreme distress and a hellish environment, were in retaliation for WILLIAMSON's exercise of his FMLA rights and/or complaining of ADA violations.

64.     Defendants **acted intentionally, and thus the three (3) year statute of limitations applies.**

WHEREFORE, Plaintiff seeks judgment against the Defendants METHODIST, and JANSKY, SERRANO, VASQUEZ, HOLSCLAW, and MUEX in an amount that is fair and reasonable in the premises, plus costs of this action, liquidated or punitive damages per statute, attorneys fees, and all other just and proper relief.

Respectfully submitted,

<u>/s/ Robin G.  Remley</u>
Robin G. Remley

robin@remley-law.com
Attorney for Plaintiff ARMANETTE WILLIAMSONLaw Office of Robin Remley LLC
(219) 756-9600

## JURY DEMAND

Plaintiff, by counsel, demands trial by jury.

Respectfully submitted,

/s/ Robin G. Remley
Robin G. Remley

robin@remley-law.com
Attorney for Plaintiff ARMANETTE WILLIAMSONLaw Office of Robin Remley LLC
(219) 756-9600

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2021, I filed the foregoing PLAINTIFF'S COMPLAINT with the Clerk of the Court, and that all parties will be served via certified mail or via Marshall once file stamped summons are received.

/s/ Robin G. Remley